[No. 59534-2-I. Division One. July 21, 2008.]

BETH O'NEILL ET AL., *Appellants*, v. THE CITY OF SHORELINE ET AL., *Respondents*.

---

[11] RCW 9.73.090 addresses electronic recording of police interrogations and prohibits recording without consent.

918

*Michael G. Brannan* (of *Law Office of Michael G. Brannan*) and *Michele L. Earl-Hubbard* (of *Allied Law Group, LLC*), for appellants.

*Ramsey E. Ramerman* (of *Foster Pepper, PLLC*) and *Ian R. Sievers, City Attorney*, and *Flannary P. Collins, Assistant*, for respondents.

¶1  Cox, J. — This is an action under the Public Records Act (PRA) of the state of Washington.[1] At issue is whether metadata in the electronic version of an e-mail is subject to disclosure under the PRA.[2]

¶2  In November 2006, Beth and Doug O'Neill commenced this action, claiming that the city of Shoreline (City) and its deputy mayor violated the PRA in responding to Ms. O'Neill's multiple requests for public records. They also contend that the trial court abused its discretion by dismissing the case after the show cause hearing, which was held solely on declarations and briefs. They further claim this procedure violated due process. Finally, they contend that the trial court erroneously awarded costs to the City and its deputy mayor, Maggie Fimia. For the reasons that follow, we affirm in part, vacate in part, and remand for further proceedings.

¶3  The material facts are not substantially in dispute. At a public meeting of the Shoreline City Council on September 18, 2006, Deputy Mayor Maggie Fimia stated that she had received an e-mail that related to a pending zoning

---

[1] We cite to the 2006 version of the PRA that was recodified in chapter 42.56 RCW and became effective on July 1, 2006. We note that portions of the PRA were further amended in 2007. *E.g.*, Laws of 2007, ch. 197, § 1.

[2] "Metadata" is not defined in standard English dictionaries. But other sources generally describe the term as "data about data," or more specifically, " 'information describing the history, tracking, or management of an electronic document.' " *Williams v. Sprint/United Mgmt. Co.*, 230 F.R.D. 640, 646 (D. Kan. 2005) (discussing the evolving state of the law concerning discovery of electronic documents and associated metadata in litigation) (quoting proposed advisory committee note to Fed. R. Civ. P. 26 (f )).

matter. According to her, the e-mail stated serious allegations of improper influence by members of the city council over that zoning matter. She said the message came to her from "a Ms. Hettrick and a Ms. O'Neill."[3]

¶4 Ms. O'Neill was present at the public meeting and claims that Deputy Mayor Fimia's remarks "came as a complete shock to [her]."[4] She orally requested "to see that e-mail."[5] Deputy Mayor Fimia stated that she would be "happy to share" the e-mail with Ms. O'Neill.[6]

¶5 Central to the dispute on appeal are actions the deputy mayor took after Ms. O'Neill's request. The deputy mayor deleted the top four lines of the header on the e-mail when she forwarded it from her personal computer to herself. Sometime thereafter, it appears she deleted the e-mail from her personal computer. Whether the editing of the e-mail and the failure to provide the entire e-mail with all metadata violates the PRA are at issue.

¶6 Further communication between Ms. O'Neill and the City (including Deputy Mayor Fimia) occurred the following day and thereafter. O'Neill made six more oral or written requests for records following the oral request at the public meeting on September 18. No one argues that any of the City's responses were untimely. We discuss the details of the requests and the responses later in this opinion.

¶7 Dissatisfied with the City's responses to the requests, the O'Neills commenced this action pursuant to the PRA, simultaneously moving for an order to appear and show cause directed to the City and Deputy Mayor Fimia. At the same time, they also moved for an order requiring the City and its agents, including the deputy mayor, to lodge public records for in camera review and to prepare a detailed record of documents withheld and exemptions claimed. All

---

[3] Clerk's Papers Sub 4, at 3 (O'Neill declaration).

[4] *Id.*

[5] *Id.*

[6] Clerk's Papers at 20 (Fimia declaration).

parties submitted declarations and briefing on the requests for relief.

¶8 The trial court reviewed the briefing, the declarations, and one record submitted for in camera review as exempt from disclosure.[7] In its order, the trial court made several findings, denied the O'Neills' motions, dismissed the action, and awarded costs to the City and the deputy mayor.[8] The trial court also denied the O'Neills' motion for reconsideration.

¶9 They appeal.

## PUBLIC RECORDS ACT

¶10 O'Neill argues that the City violated the PRA by, among other things, altering and destroying public records following her request.[9]

¶11 The PRA was enacted in 1972 by initiative as part of the public disclosure act, formerly chapter 42.17 RCW.[10] The relevant portions were later recodified at chapter 42.56 RCW and renamed the Public Records Act.[11] The PRA states:

> Each agency, in accordance with published rules, shall make available for public inspection and copying all public records, unless the record falls within the specific exemptions of . . . this chapter, or other statute which exempts or prohibits disclosure of specific information or records.[12]

---

[7] *Id.* at 141.

[8] *Id.*

[9] *Id.* at 5-6.

[10] *Soter v. Cowles Publ'g Co.*, 162 Wn.2d 716, 730, 174 P.3d 60 (2007).

[11] *Id.*

[12] RCW 42.56.070(1).

The supreme court has recognized that the PRA " 'is a strongly worded mandate for broad disclosure of public records.' "[13]

¶12 Judicial review of challenged agency actions under the PRA is de novo, and a court may examine the records in camera to determine whether disclosure is proper.[14] In light of the PRA's purpose, we liberally construe its disclosure provisions and narrowly construe its exemptions.[15] In interpreting the PRA, we "shall take into account" the following policy:

> that free and open examination of public records is in the public interest, even though such examination may cause inconvenience or embarrassment to public officials or others.[16]

## Public Records

¶13 A threshold issue under the PRA is whether the requested documents are public records.[17] O'Neill argues that the e-mail to which Deputy Mayor Fimia referred at the September 18 public meeting of the Shoreline City Council and its associated metadata are public records. The City does not dispute that the e-mail is a public record but argues that the electronic version of the e-mail was properly deleted under its then-existing records retention policy. Deputy Mayor Fimia contends that the electronic version of the e-mail and its metadata are not public records.

¶14 The PRA specifies that a "public record" is

> any *writing* containing information *relating to* the conduct of government or the performance of any governmental or propri-

---

[13] *Soter*, 162 Wn.2d at 730 (quoting *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 127, 580 P.2d 246 (1978)).

[14] RCW 42.56.550(3).

[15] *Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 125 Wn.2d 243, 251, 884 P.2d 592 (1994) (*PAWS*) (citing RCW 42.17.010(11), *recodified as* RCW 42.56.030).

[16] RCW 42.56.550(3).

[17] *See Tiberino v. Spokane County*, 103 Wn. App. 680, 687, 13 P.3d 1104 (2000).

etary function prepared, ***owned, used, or retained*** by any state or ***local agency*** regardless of physical form or characteristics.[18]

A "writing" is defined as

> handwriting, typewriting, printing, photostating, photograph-ing, and every other means of recording any form of communi-cation or representation, including, but not limited to, letters, words, pictures, sounds, or symbols, or combination thereof, and all papers, maps, magnetic or paper tapes, photographic films and prints, motion picture, film and video recordings, magnetic or punched cards, discs, drums, diskettes, sound recordings, and other documents including existing data compilations from which information may be obtained or translated.[19]

¶15 It is undisputed that the City is a "local agency" under the PRA.[20] Moreover, there can be no serious dispute that the e-mail to which Deputy Mayor Fimia referred at the September 18 public meeting is a public record. It is (a) a "writing" that (b) "relat[es] to the conduct of government or the performance of [a] governmental . . . function" that the deputy mayor (c) "used" during the public meeting. She stated that the message commented on alleged improprieties in dealing with a zoning matter before the city council, making it a subject for discussion at the meeting.[21] The

---

[18] Former RCW 42.17.020(41) (2005) (emphasis added). The 2006 version of the PRA incorporated the definitions from former RCW 42.17.020. *See* former RCW 42.56.010 (2005). The PRA was amended in 2007, and the identical definition of "public record" now appears in the PRA. *See* RCW 42.56.010(2). RCW 42.17.020 was also amended in 2007. Those amendments likewise did not change the definition of "public record." *See* LAWS OF 2007, ch. 358, § 1.

[19] Former RCW 42.17.020(48) (2005). The 2007 amendments to former RCW 42.17.020 and to former RCW 42.56.010 did not affect the definition of "writing." *See* LAWS OF 2007, ch. 358, § 1; LAWS OF 2007, ch. 197, § 1.

[20] The PRA provides that an agency includes local agencies. A "local agency" includes, among other things, every city and office, department, division, bureau, board, commission, or agency thereof. RCW 42.17.020(2). The 2007 amendments to former RCW 42.17.020 and to former RCW 42.56.010 did not change the definition of "agency." *See* LAWS OF 2007, ch. 358, § 1; LAWS OF 2007, ch. 197, § 1.

[21] *See Concerned Ratepayers Ass'n v. Pub. Util. Dist. No. 1 of Clark County*, 138 Wn.2d 950, 961, 983 P.2d 635 (1999) (technical document was used when public

e-mail fulfills the plain meaning of the statutory definition of a "public record."

¶16 Deputy Mayor Fimia argues that the electronic version of the e-mail is not a public record because it was not "used" by the City. She argues that it was created and transmitted by a private citizen, not the City. Her argument fails to acknowledge that Deputy Mayor Fimia used the e-mail when she made it the subject of public comment at the city council meeting. And she cites no authority for the proposition that a private citizen's creation and transmission of an e-mail is relevant to the question whether the e-mail is a public record. We conclude that the electronic version of the e-mail is a public record.

¶17 We next turn to the question of whether the metadata associated with the foregoing e-mail is also a public record. As we previously indicated, the definitions section of the PRA provides the answer. A "public record" is

> any *writing* containing information *relating to* the conduct of government or the performance of any governmental or proprietary function prepared, *owned,* used, or retained by any state or local agency regardless of physical form or characteristics.[22]

A "writing" is

> [h]andwriting . . . and every other means of recording any form of communication or representation, including, but not limited to, . . . magnetic or punched cards, discs, drums, diskettes, . . . and other documents including existing data compilations from which information may be obtained or translated.[23]

¶18 The metadata associated with the e-mail, or some portion of it, falls within the broad definition of a "writing." It is sufficiently similar to the examples of the types of documents in the definition to qualify as a "writing."

---

utility district officials attended a meeting and reviewed the document during negotiations).

[22] Former RCW 42.17.020(41) (2005) (emphasis added).

[23] Former RCW 42.17.020(48) (2005).

Accordingly, the information falls within that broad definition in the statute, as we must liberally interpret the PRA.

¶19 Moreover, on this record, the metadata contains information that "relates to" the conduct of government or the performance of a governmental function. For example, it shows the e-mail addresses of persons who may have knowledge of alleged government improprieties in dealing with a zoning matter. This falls squarely within the statute's definition of "public record," as we must liberally construe the PRA. On remand, the trial court should determine which of the other portions of the metadata in the e-mail fall within the scope of the PRA.

¶20 Finally, no one argues that anyone other than the deputy mayor, an agent of the City, "owns" the metadata from the e-mail she received on her personal e-mail account that she uses, in part, for the City's business.[24] The PRA does not define "own." Thus, reference to a dictionary is permissible to determine legislative intent.[25] The dictionary definition of "own" is "[t]o have or possess as property."[26] Using that definition here, it is clear that the City owns the metadata associated with the requested e-mail.

¶21 We conclude that, on this record, the metadata associated with the e-mail Deputy Mayor Fimia discussed at the meeting, or some portion of it, is also a public record. We do not rule on the more general question whether e-mail or metadata that is transmitted to personal e-mail accounts, without more, is subject to the PRA. Here, the materials at issue fall within the statutory definitions subjecting those materials to disclosure under the PRA. Moreover, the metadata was specifically requested in this case.

¶22 The City does not dispute in its brief that the metadata associated with the e-mail is a public record.

---

[24] *See* Clerk's Papers at 19 (Fimia declaration).

[25] *See Concerned Ratepayers*, 138 Wn.2d at 959 (defining the term "use" with reference to a dictionary definition).

[26] The American Heritage Dictionary 1294 (3d ed. 1992).

Moreover, we find nothing in the record indicating that the City ever took the position, either before or during this litigation, that the metadata at issue here is not a public record. While the City appears to have taken a different position at oral argument before this court, we conclude that its position at oral argument does not address, in a persuasive way, the analysis we set forth above.

*Requests for Public Records and Responses*

¶23 As in most public records cases, the other basic issues here are whether all public records that O'Neill requested were provided and whether the City bore its burden to show that any requested records are exempt. Here, O'Neill specifically argues that the City altered and deleted an e-mail after her request for that e-mail and failed to protect public records from damage or destruction.[27] O'Neill also directly attacks the trial court's ruling that " 'no additional responsive records are available or contained on the computer hard drive of [Deputy Mayor Fimia] and duplication of the hard drive for further in camera inspection is not warranted.' "[28]

¶24 The PRA requires agency rules to "provide for the fullest assistance to inquirers."[29] Agencies shall refrain from destroying public records that are subject to a pending public record request.[30] The PRA requires disclosure only when there has been a request for an "identifiable" public record.[31] This requires "a reasonable descrip-

---

[27] Brief of Appellants at 30-31.

[28] *Id.* at 34 (quoting Clerk's Papers at 141 (trial court's order)).

[29] RCW 42.56.100.

[30] *Id.*

[31] RCW 42.56.080.

tion enabling the government employee to locate the requested records."[32]

¶25 We first examine O'Neill's claim that the City failed to provide the e-mail in response to her oral request of September 18, 2006, at the city council meeting on that date. Doing so requires a close reading of the record.

¶26 This matter originated when Deputy Mayor Maggie Fimia received on September 18, 2006, an e-mail from Lisa Thwing. That message forwarded an e-mail that was from Diane Hettrick. The header in the e-mail to the deputy mayor from Thwing reads:

**From:** "Lisa Thwing" <tootrd@comcast.net>

**Date:** Mon, 18 Sep 2006 07:55:38 -0700

**To:** "Lisa Thwing" <tootrd@comcast.net>

**Subject:** Current city council meeting being broadcast this week

**From:** Diane Hettrick <mailto:dhettrick@earthlink.net>

**Sent:** Thursday, September 14, 2006 11:40 PM

**Subject:** Current city council meeting being broadcast this week

The body of the message begins as follows:

From my friend Judy:

Hi Folks,

My dear friend, Beth O'Neill has asked me to pass along information about our dysfunctional Shoreline City Council.[33]

The e-mail goes on to state that city council members are "playing favorites" in zoning decisions in favor of their political supporters.

---

[32] *Bonamy v. City of Seattle*, 92 Wn. App. 403, 410, 960 P.2d 447 (1998) (quoting *Bristol-Meyers Co. v. Fed. Trade Comm'n*, 138 U.S. App. D.C. 22, 424 F.2d 935, 938 (1970)).

[33] Clerk's Papers Sub 4 Ex. J at 21.

¶27 That night, a Monday, the Shoreline City Council held a public meeting.[34] At that meeting, Deputy Mayor Fimia publicly stated that she had received an e-mail from "a Ms. Hettrick and a Ms. O'Neill" containing serious allegations that city council members were using their influence to affect zoning decisions.

¶28 During the public comment portion of this meeting that followed, Ms. O'Neill denied knowledge of the message that the deputy mayor described and orally requested to "see that e-mail." Deputy Mayor Fimia responded that she did not have the document with her but would be happy to share it with O'Neill.

¶29 Following the public meeting, the deputy mayor reviewed the e-mail from Thwing and forwarded that e-mail from her personal e-mail account to herself. Before forwarding this e-mail, the deputy mayor deleted the first four lines of the header, which includes the "to" and "from" lines listing Thwing as the sender and recipient. She did this "in order to protect Ms. Thwing from potential public exposure."[35] The deputy mayor did not otherwise modify the e-mail from Thwing. The next day, September 19, she forwarded the altered e-mail to Carolyn Wurdeman, executive assistant to the city manager.

¶30 That same day, a Tuesday, O'Neill called the City of Shoreline and left a voicemail message *"again requesting a copy of the e-mail."*[36] When she was told later that day that the e-mail was missing the "To" header, O'Neill orally requested the entire e-mail string. She also said that she would come down to pick up the material.

¶31 In response, Carolyn Wurdeman sent an e-mail to Deputy Mayor Fimia requesting "information about who the e-mail [was] sent to." The deputy mayor responded that "there was no 'To' line in the e-mail."

---

[34] The record indicates that September 18, 2006, was a Monday. *See id.* at 1.

[35] Clerk's Papers at 21 (Fimia declaration).

[36] Clerk's Papers Sub 4 Ex. J at 4 (emphasis added).

¶32 On Wednesday, September 20, O'Neill went to the city clerk's office to pick up the requested record. There, she submitted her first written request, PD 06-135, for the "E-mail mentioned by Deputy Mayor Fimia at the 9-18 Council meeting." In response, the clerk's office gave O'Neill a hard copy of the e-mail from Hettrick, without the forwarding header from Thwing.

¶33 Dissatisfied with the record she received, O'Neill immediately submitted another written request, PD 06--134. She requested

> all information relating to this e-mail: how it was received by Maggie Fimia, from whom it was received, and the forwarding chain of the e-mail.[37]

¶34 On Monday, September 25, Deputy Mayor Fimia located the original September 18 e-mail from Thwing on her computer and forwarded the complete e-mail, including the forwarding information from Thwing, to the city attorney.[38] The same day, the City gave O'Neill a hard copy of that complete e-mail.[39] This copy included both headers, each of which in turn included the date and time of the message. Significantly, O'Neill does not dispute having received a complete copy of this e-mail on September 25.

¶35 The deputy mayor deleted the original e-mail from her computer sometime after forwarding the message to the city attorney. The record is unclear on when this deletion occurred.[40]

¶36 That same day, Monday, September 25, O'Neill submitted a third written request, PD 06-138. It expanded on the prior requests by seeking

---

[37] *Id.* Sub 4 Ex. F.

[38] Clerk's Papers at 22 (Fimia declaration).

[39] *Id.* at 34 (Shenk declaration).

[40] *Compare id.* at 21-22 *with* Clerk's Papers Sub 4 Ex. J at 27 (showing a date stamp of September 26).

[a]ny and all correspondence (including memos) relating to this [e-mail] and a COMPLETE transmission / forwarding chain AND ALL *metadata* pertaining to this document.[41]

¶37 That evening, there was another city council meeting. At the meeting, Deputy Mayor Fimia publicly corrected the error she made in the September 18 meeting by explaining that Hettrick had sent the original e-mail quoting her friend "Judy," but that O'Neill had not sent the e-mail.

¶38 On Wednesday, September 27, O'Neill submitted a fourth written records request, PD 06-139. Specifically, she sought a copy of the e-mail Deputy Mayor Fimia mentioned during the September 25 council meeting, including all *"metadata,* memos, and any other correspondence relating to this document."[42]

¶39 The City responded to O'Neill's third and fourth written requests on September 29. It provided numerous records and also indicated that further records would likely be available by October 5.

¶40 The City's letter stated that it was declining to disclose one document that was covered by the attorney-client privilege. That document was later accidentally released to O'Neill.

¶41 The records provided included, among other documents, metadata from a copy of the e-mail that Deputy Mayor Fimia had apparently sent to herself on September 26.[43]

¶42 The letter also informed O'Neill that the City would search Deputy Mayor Fimia's computer for any additional responsive records. We describe later in this opinion the City's efforts in this respect.

---

[41] Clerk's Papers Sub 4 Ex. G (emphasis added).

[42] Clerk's Papers Sub 4 Ex. I (emphasis added).

[43] *See id.* Sub 4 Ex. J at 27. Deputy Mayor Fimia did not state in her declaration that she sent a copy of the e-mail to herself on September 26, a day after she sent it to the city attorney. Nevertheless, the record contains the metadata from such an e-mail with a date stamp of September 26. O'Neill received a copy of this metadata.

¶43 In the meantime, Deputy Mayor Fimia was unable to locate the original e-mail on her computer, so she asked Thwing to resend it to her. On September 30, Thwing complied with that request.[44]

¶44 The City provided a second installment of records to O'Neill on October 3. The second installment included a paper copy of the original e-mail that Thwing resent to Deputy Mayor Fimia on September 30 and metadata from that e-mail. It also included metadata from the September 18 e-mail Thwing had sent to Janet Way, a city council member. The City declined to release one additional document based on attorney-client privilege.

¶45 On October 16, O'Neill submitted her fifth and final written records request, PD 06-154. Her request essentially reiterated her past requests and also requested any and all documents of any kind relating to the incident or the City's treatment of the incident.

¶46 The City responded on either October 23 or 24. Included in its response were several e-mail messages. On October 25, the City supplemented its response to O'Neill's fourth written request.

¶47 O'Neill first argues that the City did not comply with her oral request of September 18 at the public meeting because the deputy mayor intentionally altered the e-mail by deleting the forwarding header after the request. O'Neill also claims the deputy mayor's later deletion of the entire e-mail violated the PRA.

¶48 The record shows that O'Neill made an oral request at the September 18, 2006 public meeting to "see that e-mail" to which the deputy mayor referred at that meeting. A fair reading of that request is that O'Neill sought to see the entire e-mail, not an altered version of it. It is undisputed that the deputy mayor altered the e-mail after the oral request and before forwarding it by removing the header information showing who sent it to her. Nothing

---

[44] Clerk's Papers at 34.

in the PRA supports alteration of the record "in order to protect Ms. Thwing from potential public exposure," the deputy mayor's stated rationale for altering the document.

¶49 O'Neill argues that Deputy Mayor Fimia's "alteration" of the original e-mail could support a criminal charge under chapter 40.16 RCW. That statute renders the destruction of a public record a class C felony.[45] But this is a civil case, not a criminal prosecution. Whether anyone is liable for violation of chapter 40.16 RCW is not presently before us. There has been no charging decision by a prosecutor and no determination of guilt beyond a reasonable doubt by a jury.

¶50 O'Neill does not dispute that on September 25, 2006, she received a hard copy of the original e-mail, which contained the header and body of the September 18 e-mail.[46] This was within five business days of September 18, 2006, the date of her original request, as RCW 42.56.520 expressly requires.[47] In short, O'Neill received a timely and complete response to the records request to see the e-mail from Thwing.

¶51 O'Neill argues that her September 18 request fairly identified that she sought the electronic version of the e-mail. A careful reading of the record shows that she did not make that request on that date.

¶52 The City is not required to be a mind reader when responding to public records requests.[48] The PRA requires providing a public record only when it is identifi-

---

[45] RCW 40.16.010.

[46] Clerk's Papers at 34 (Shenk declaration).

[47] RCW 42.56.520 provides:

Within five business days of receiving a public record request, an agency . . . must respond by either (1) providing the record; (2) acknowledging that the agency . . . has received the request and providing a reasonable estimate of the time the agency . . . will require to respond to the request; or (3) denying the public record request.

[48] *Bonamy*, 92 Wn. App. at 409.

able.[49] Here, the oral request on September 18 makes no mention of either the electronic version of the e-mail or its associated metadata. Rather, the O'Neill declaration in this case states that her voice mail to the City the following morning clarified that she sought a *"copy of the e-mail."*[50] We conclude from our review of her own words that she did not request an electronic copy of the e-mail or its metadata on September 18.

¶53 Deputy Mayor Fimia argues that requiring her to identify Thwing as the sender of the e-mail violates her First Amendment right to freedom of association. We disagree.

¶54 Washington's First Amendment jurisprudence requires an initial showing that there is "some probability that the requested disclosure will infringe upon [the person's] First Amendment rights."[51] For example, requiring a group to disclose all membership lists, meeting notes, and financial records would have a chilling effect on the members' First Amendment rights.[52] After such a showing, the burden shifts to the party seeking discovery to show the relevance and materiality of the information and that reasonable efforts to obtain the information another way have been unsuccessful.[53] Here, Deputy Mayor Fimia has failed to produce any evidence or reasoned argument to make the required initial showing that there is some probability the disclosure of one sender of one e-mail would burden her right to association.

¶55 Next, we must determine whether the City complied with O'Neill's request for the e-mail's metadata, which she first requested on September 25.

---

[49] *Id.* at 410 (citing RCW 42.17.270).

[50] Clerk's Papers Sub 4, at 4 (emphasis added).

[51] *Right-Price Recreation, LLC v. Connells Prairie Cmty. Council*, 105 Wn. App. 813, 822, 21 P.3d 1157 (2001), *aff'd in part and remanded on other grounds*, 146 Wn.2d 370, 46 P.3d 789 (2002).

[52] *Id.* at 825.

[53] *Id.* at 822.

¶56 Deputy Mayor Fimia describes the deletion of the e-mail as accidental. She also testified that she was not familiar with the term "metadata" until O'Neill requested that information. This latter statement could be read to suggest that the deputy mayor did not intentionally delete any metadata before O'Neill specifically requested that information. The City defends on the basis that the deletion of the e-mail and associated metadata was consistent with its records retention policy.

¶57 The records retention guidelines promulgated by the secretary of state provide that certain e-mails are public records. Those that are public records may be deleted as long as they are printed along with the following information: name of sender, name of recipient, and date and time of transmission and/or receipt.[54] The City's actions in this case appear to have complied with these guidelines. O'Neill does not argue otherwise.

¶58 However, the PRA directs courts to review agency actions de novo, giving them no deference in determining whether a record is subject to disclosure under the PRA.[55] And when there is a conflict between the PRA and another law, the PRA controls.[56] Thus, the records retention guidelines then in effect do not inform the questions presented in this case, which we review de novo.

¶59 Here, the City admits that it did not provide the exact metadata from the original e-mail. Rather, the City argues that O'Neill received metadata "associated with" the e-mail.[57] Specifically, it argues that it provided to O'Neill metadata from a copy of the e-mail to the deputy mayor that Thwing sent to Janet Way on the same date.

---

[54] Clerk's Papers at 92; *see also id.* at 36 (retention schedule).

[55] *Hearst Corp.*, 90 Wn.2d at 129-31; *Zink v. City of Mesa*, 140 Wn. App. 328, 335-37, 166 P.3d 738 (2007).

[56] *PAWS*, 125 Wn.2d at 262 (citing RCW 42.17.920, which was codified in the PRA at RCW 42.56.030).

[57] Brief of Respondent City of Shoreline at 22.

¶60 Without having the metadata associated with the September 18 e-mail to the deputy mayor before us, we cannot tell the extent to which it differs from the metadata from the e-mail that went to Way, which was provided to O'Neill. In any event, the metadata from the e-mail to Way is not the specific record O'Neill requested. At the very least, the information contained in the headers of the respective e-mails would likely be different. This header information includes, among other things, the name, e-mail address, and Internet protocol address of the e-mail's recipient.[58] In short, the City has not yet proved that it provided to O'Neill access to the metadata she requested. She is entitled to this public record.

¶61 Our conclusion on this point addresses O'Neill's challenge to the trial court's ruling that " '[n]o additional responsive records are available or contained on the computer hard drive of [Deputy Mayor Fimia] and duplication of the hard drive for further in camera inspection is not warranted.' "[59] In response, the City contends that it conducted a thorough search for the deleted e-mail on that hard drive. But the record in this case does not fully support the City's contention.

¶62 Joel Taylor, a computer and network specialist for the City, stated only that he searched Deputy Mayor Fimia's e-mail program for the missing e-mail.[60] A search of the City's backup drive would not have helped because the deputy mayor did not receive the e-mail on her city e-mail account.[61]

¶63 Tho Dao, the City's manager of information services, stated that the City did *not* search Deputy Mayor Fimia's hard drive:

> The City only has software capable of copying the hard drives of personal computers ("PC"), not macintosh computers ("MAC").

---

[58] Clerk's Papers Sub 4 Ex. L at 4.

[59] Brief of Appellant at 34 (quoting the trial court's order).

[60] Clerk's Papers at 29-30.

[61] *Id.* at 30.

The Deputy Mayor has a MAC. I estimate the cost to purchase the software capable of copying a MAC hard drive at somewhere between $500 - $1,000.[62]

¶64 On this record, we cannot tell whether the hard drive of the deputy mayor's computer contains metadata associated with the September 18 e-mail that would be responsive to the request. The trial court shall determine the answer to that question on remand.

¶65 We also note that the deputy mayor forwarded to the city attorney the September 18 e-mail to which she referred at the September 18 meeting. This record does not tell us whether that forwarded e-mail had with it the same metadata that O'Neill sought or whether the City could provide the metadata from the forwarded e-mail to her in response to her request. Whether the metadata is the same or different is a question this court cannot answer. We leave it for decision by the trial court on remand.

¶66 The trial court should also consider on remand whether the e-mail Thwing resent to the deputy mayor contains the requested metadata. Again, we cannot tell on this record whether it does.

¶67 If the metadata exists from any of these sources, it is subject to O'Neill's pending record request, and the City is required under the PRA to provide it to her. If it does not exist, the trial court must determine, consistent with this opinion, whether the City's deletion of the metadata violated the PRA.[63] Where appropriate, the trial court should determine the appropriate monetary penalty under the PRA.[64]

---

[62] *Id.* at 25.

[63] O'Neill appears to rely on RCW 42.56.100 as a basis for claiming the City violated the PRA. Reply of Appellants to Brief of City of Shoreline at 2-3. Because the record is unclear on when an electronic version of the September 18 e-mail was destroyed, we cannot address whether the PRA was violated in this respect.

[64] *See Yacobellis v. City of Bellingham*, 64 Wn. App. 295, 298, 299 n.3, 825 P.2d 324 (1992) (imposing a monetary penalty for the city's failure to disclose a destroyed record for each day the record was withheld from the date of the request through the date the supreme court denied review of the matter), *abrogated in*

¶68 O'Neill also challenges the trial court's conclusion regarding the record the City withheld as attorney-client privileged.[65] The evidence in the record describes in detail the nature of this document.[66] The trial court was vested with the discretion to review the evidence and the document claimed exempt and conclude that the City met its burden in proving that this document was privileged. Nothing in the PRA requires anything more. The trial court's decision was proper with regard to the exempt document.

¶69 Finally, O'Neill cites an unpublished case from another jurisdiction regarding electronic information to support her argument concerning the computer's hard drive. We note that our court rules prohibit the citation of unpublished cases under the circumstances here because the rules of the other jurisdiction do not allow such citation.[67] We also note that in the past we have imposed sanctions for unauthorized citation of unpublished cases.[68] Because no party has sought sanctions, we limit our comments to directing all counsel to the relevant Rules of Appellate Procedure.

### Dismissal at Show Cause Hearing

¶70 O'Neill argues that the trial court abused its discretion in dismissing her complaint without a hearing or trial on the merits. Specifically, she asserts that the decision to

---

*part on other grounds by Amren v. City of Kalama,* 131 Wn.2d 25, 929 P.2d 389 (1997).

[65] Another record was withheld until it was accidentally released to O'Neill.

[66] *See* Clerk's Papers at 32-34 (Shenk declaration).

[67] *See* Appellant's Brief at 35 (citing *Krumwiede v. Brighton Assocs.,* No. 05 C 3003, 2006 WL 1308629, 2006 U.S. Dist. LEXIS 31669 (N.D. Ill. May 8, 2006)); RAP 10.4(h); GR 14.1 (whether unpublished case may be cited depends upon the rule in that jurisdiction); FED. R. APP. P. 32.1(a) (cases published before Jan. 1, 2007 are subject to local rules regarding publication); 7TH CIR. R. 32.1 (unpublished cases may not be cited as precedent).

[68] *See Dwyer v. J.I. Kislak Mortgage Corp.,* 103 Wn. App. 542, 548-49, 13 P.3d 240 (2000).

dismiss was contrary to the requirements of the PRA and violated due process.

¶71 RCW 42.56.550 sets forth the procedure to be followed when a litigant wishes to challenge an agency's actions surrounding a public records request. The statute provides for the superior court in the relevant county to conduct a show cause hearing at which the agency may be required to justify its response to a request for public records.[69] At such a hearing, the agency bears the burden of proving that any public record not provided is exempted from disclosure.[70] The PRA explicitly states, "The court may conduct a hearing based solely on affidavits."[71] "[S]how cause hearings are the usual method of resolving litigation under" the PRA.[72] Our supreme court has stated that trial court rulings under the PRA are trial "management decisions" that are designed to avoid making "public disclosure act cases so expensive that citizens could not use the act for its intended purpose."[73] Dismissal of an action is subject to review for abuse of discretion.[74]

¶72 Here, O'Neill did not request oral argument on her motion to show cause. The court was permitted by statute to resolve, without oral argument, the basic issues before it: whether all requested public records were produced and whether the City had fulfilled its burden justifying any exemptions from disclosure under the PRA.

¶73 Although we disagree with the trial court's ruling to the extent that it held that no further records were subject to disclosure, that does not mean that a hearing with oral

---

[69] RCW 42.56.550(1).

[70] *Id.*

[71] RCW 42.56.550(3); *see also* WAC 44-14-08004(1) ("To speed up the court process, a public records case may be decided merely on the 'motion' of a requestor and 'solely on affidavits.'" (quoting RCW 42.56.550(1), (3)).

[72] *Wood v. Thurston County*, 117 Wn. App. 22, 27, 68 P.3d 1084 (2003).

[73] *Brouillet v. Cowles Publ'g Co.*, 114 Wn.2d 788, 801, 791 P.2d 526 (1990).

[74] *Quality Rock Prods., Inc. v. Thurston County*, 126 Wn. App. 250, 260, 108 P.3d 805 (2005).

argument or a trial must follow. The PRA outlines the procedure to be followed in cases of this type, and nothing in that act requires either a hearing with oral argument or a trial.

¶74 The argument that the procedure here violated other, inapplicable rules is unpersuasive. This was neither a CR 56 matter nor a CR 12(b)(6) matter, despite O'Neill's attempt to characterize it in that manner.

¶75 Moreover, O'Neill's reference to the general right of discovery in civil cases does not convincingly advance the argument. The discovery rules have nothing to do with the statutory show cause proceeding that the trial court utilized in this case. In short, for a proper resolution of the issues then before it, there was nothing to prohibit the court from dismissing the case at the show causing hearing pursuant to RCW 42.56.550(1).

¶76 The due process argument is also unavailing. O'Neill fails to cite to any authority that supports a constitutional right to a hearing with oral argument under the circumstances of this case. There was no due process violation.

¶77 O'Neill assigns error to the trial court's denial of the motion for reconsideration but does not separately argue this point. Accordingly, we do not address this specific argument.

## Costs

¶78 O'Neill next argues that the trial court improperly awarded costs in favor of the City and Deputy Mayor Fimia. This claim is now moot, and we conclude there is no reason to address it.

¶79 The reviewing court should award attorney fees and costs to a party "prevail[ing] against an agency."[75] The court should also award the prevailing party between

---

[75] RCW 42.56.550(4).

$5 and $100, in its discretion, for each day the record was unlawfully withheld.[76]

¶80 In its order addressing the PRA issues and dismissing the case, the trial court awarded costs "to Defendants." The court denied O'Neill's motion for reconsideration of this order. Significantly, in response to that motion below, the City rescinded its request for costs.

¶81 On appeal, the City expressly states that it does not object to the court "striking this portion of the order since it is consistent with the City's position in the trial court proceeding."[77] We accept the City's proposal. Accordingly, we vacate the portion of the order granting costs to the City and Deputy Mayor Fimia.

¶82 Finally, O'Neill also seeks attorney fees on appeal based on the PRA. An award is proper because she has partially prevailed. The trial court shall determine the amount of fees, as provided in RAP 18.1(i).

¶83 We affirm the trial court's order to the extent of the request for e-mails and the ruling on the exempt record. We vacate the portion of the order to the extent of the request for metadata, the decision that "defendants have established that no additional responsive records are available or contained on the computer hard drive," and the award of costs "to Defendants." We remand for further proceedings consistent with this opinion.

APPELWICK and LAU, JJ., concur.

After modification, further reconsideration denied September 25, 2008.

Review granted at 165 Wn.2d at 1044 (2009).

---

[76] *Id.*

[77] Brief of Respondent City of Shoreline at 27.