138

[No. 82397-9. En Banc.]
Argued March 16, 2010. Decided October 7, 2010.

DOUG O'NEILL ET AL., *Respondents*, v. THE CITY OF SHORELINE
ET AL., *Petitioners*.

*Ian R. Sievers*, City Attorney for the City of Shoreline, and *Flannary P. Collins*, Assistant; and *Ramsey E. Ramerman*, Assistant City Attorney for the City of Everett, for petitioners.

*Michele Lynn Earl-Hubbard* and *Christopher Roslaniec* (of Allied Law Group); *Michael G. Brannan* (of Law Office of Michael G. Brannan); and *David M. Norman*, for respondents.

*Gary T. Smith*, *Suzanne M. Skinner*, and *John Benjamin Kerr Schochet* on behalf of Washington Association of Municipal Attorneys, amicus curiae.

*William J. Crittenden* and *Patrick D. Brown* on behalf of Washington Coalition for Open Government, amicus curiae.

*James W. Beck* on behalf of Washington Newspaper Publishers Association and Allied Daily Newspapers of Washington, amici curiae

*Alan D. Copsey, Deputy Solicitor General*, on behalf of the State of Washington, amicus curiae.

¶1 OWENS, J. — This case allows us to consider whether metadata is a public record that must be disclosed under the Public Records Act (PRA), chapter 42.56 RCW. This is a matter of first impression before this court. We affirm the Court of Appeals and hold that metadata associated with public records is subject to disclosure under the PRA.

## FACTS

¶2 On September 14, 2006, Diane Hettrick (a private citizen) wrote an e-mail to Lisa Thwing (also a private

citizen) and possibly others. The relevant portion of the e-mail stated:

Hi folks,

My dear friend, Beth O'Neill has asked me to pass along information about our dysfunctional Shoreline City Council. Beth and some other folks have been working hard battling certain issues regarding an illegal rental in their neighborhood. What should be a legal and zoning issue has gotten mired into the politics of our 32nd District Democrats and certain City Council folks are playing favorites with their own political supporters.

Ex. J at 21.

¶3 On September 18, Thwing forwarded this e-mail to Shoreline Deputy Mayor Maggie Fimia, City Councilmember Janet Way, and others. The e-mail that Fimia received did not list any other recipients that Thwing had sent it to, as Thwing had first forwarded the e-mail to herself and blind carbon copied all other recipients. As a result, only Thwing's name and e-mail address showed up as a recipient on the e-mail header that Fimia received.

¶4 At a public meeting of the Shoreline City Council (Council) on September 18, Fimia stated that she had been sent a copy of an e-mail allegedly sent by "a Ms. Hettrick and a Ms. O'Neill" accusing the Council of improper conduct. Clerk's Papers (CP) at 20. Ms. O'Neill immediately made an oral request for that e-mail and denied authoring it. Fimia stated that she "would be happy to share the e-mail with Ms. O'Neill." *Id.* When she returned home from the council meeting, Fimia forwarded the original Thwing e-mail to Fimia's personal e-mail account. In forwarding the e-mail, Fimia removed the "to" and "from" line listing Thwing as the sender and recipient, but she did not remove any additional information from the e-mail. Fimia claimed that she did this "in order to protect Ms. Thwing from potential public exposure." CP at 21. On September 19, Fimia forwarded this new e-mail to staff at the city of Shoreline (City), which provided it in print to Ms. O'Neill.

This e-mail did not include the sender or recipient information of the e-mail from Hettrick to Thwing, nor did it include the sender or recipient information of the e-mail from Thwing to Fimia. Ms. O'Neill then asked in writing for the City to provide all information relating to the e-mail, including how it was received by Fimia, from whom it was received, and the forwarding chain of the e-mail. Fimia found the original, unaltered September 18 e-mail from Thwing to Fimia, including the forwarding information that the e-mail had originally been sent by Hettrick on September 14, and forwarded it to the city attorney. On September 25, the City gave the O'Neills a hard copy of that unaltered, complete e-mail string, including both headers, each of which included the date and time of the message.

¶5 After receiving the second disclosure on September 25, Ms. O'Neill explicitly requested the *metadata* from the e-mail's entire chain, including "[all] metadata pertaining to" the e-mail that Thwing had sent Fimia. Ex. G. "Metadata" is most clearly defined as "data about data" or hidden information about electronic documents created by software programs. Jembaa Cole, *When Invisible Electronic Ink Leaves Red Faces: Tactical, Legal and Ethical Consequences of the Failure to Remove Metadata*, 1 SHIDLER J. L. COM. & TECH. 8, ¶ 7 (Feb. 2, 2005), http://www.lctjournal. washington.edu/ Vol1/a008Cole.html. Fimia attempted to find the metadata associated with the original e-mail from Thwing but could not find it; Fimia concluded that she must have inadvertently destroyed it. Fimia asked Thwing to again resend the original e-mail to her, which Thwing did on September 29. Fimia provided this e-mail, along with the e-mail's metadata, to city staff for distribution to Ms. O'Neill. The City then provided another installation of records to Ms. O'Neill on October 3, including a paper copy of the e-mail that Thwing resent to Fimia on September 29 and metadata from that e-mail. The City also provided Ms. O'Neill with metadata from the identical September 18 e-mail that Thwing had sent to City Councilmember Janet Way, after extracting it from Way's

computer. Ms. O'Neill nevertheless continued to seek all metadata associated with the e-mail string. Since Fimia had destroyed the original September 18 e-mail, the City was unable to provide Ms. O'Neill with the metadata associated with the e-mail that Thwing sent to Fimia on September 18. Ms. O'Neill brought suit under the PRA. The trial court reviewed the motions and affidavits, dismissed the action, and awarded costs to the City and deputy mayor.

¶6 Ms. O'Neill and her husband, Doug O'Neill, appealed, and the Court of Appeals found that metadata must be disclosed under the PRA. The Court of Appeals ruled that metadata from Thwing's original e-mail to Fimia was a public record and that the O'Neills are entitled to it. *O'Neill v. City of Shoreline*, 145 Wn. App. 913, 935, 187 P.3d 822 (2008). It stated that the City never provided the O'Neills with the exact requested public record. *Id.* In particular, the Court of Appeals stated that the name, e-mail address, and Internet protocol address on the metadata that the O'Neills received, among other things, might be different. *Id.* Since the Court of Appeals thought that the header information on the two e-mails might be different, it ruled that the O'Neills were entitled to the metadata from Thwing's original e-mail to Fimia. *Id.* It then remanded for the trial court to determine whether Fimia's hard drive contained metadata associated with the September 18 e-mail, whether the City had violated the PRA by not releasing covered public records, and if so, the appropriate monetary penalty under the PRA. *Id.* at 936. The Court of Appeals also awarded attorney fees to the O'Neills and decided that a public records request can be decided based on affidavits alone. *Id.* at 938-40. The City and Deputy Mayor Fimia petitioned for review, which we granted. *O'Neill v. City of Shoreline*, 165 Wn.2d 1044, 208 P.3d 554 (2009).

## ISSUES

¶7 1. Is e-mail metadata a public record that must be disclosed under the PRA?

¶8 2. Does a request to see an e-mail inherently include a request to see metadata?

¶9 3. Did the Court of Appeals err by granting attorney fees?

¶10 4. Can a public records request be decided on affidavits alone?

## STANDARD OF REVIEW

■ ¶11 We review challenges to agency actions under the PRA de novo. *City of Federal Way v. Koenig*, 167 Wn.2d 341, 344, 217 P.3d 1172 (2009) (citing *Soter v. Cowles Publ'g Co.*, 162 Wn.2d 716, 731, 174 P.3d 60 (2007)).

## ANALYSIS

I. Metadata Is Subject to the PRA

■ ¶12 The Court of Appeals ruled that metadata from Thwing's original September 18 e-mail to Fimia was a public record and that the O'Neills are entitled to it. *O'Neill*, 145 Wn. App. at 935. "Metadata," while not defined in standard English dictionaries, has been defined in various other sources. "Metadata is quite simply data about data, or hidden statistical information about a document that is generated by a software program." Cole, *supra*, at ¶ 7 (footnote omitted). " 'Metadata' is 'information describing the history, tracking, or management of an electronic document.' " *Lake v. City of Phoenix*, 222 Ariz. 547, 548 n.1, 218 P.3d 1004 (2009) (quoting *Williams v. Sprint/United Mgmt. Co.*, 230 F.R.D. 640, 646 (D. Kan. 2005)). Examples of e-mail metadata "include, among about 1,200 or more properties, such information as the dates that mail was sent, received, replied to or forwarded, blind carbon copy . . . information, and sender address book information." WORKING GRP. ON ELEC. DOC. RETENTION & PROD., THE SEDONA CONFERENCE, THE SEDONA PRINCIPLES: BEST PRACTICES RECOMMENDATIONS AND PRINCIPLES FOR ADDRESSING ELECTRONIC DOCUMENT PRODUCTION 3 (2d ed. June 2007), *available at* http://www.thesedonaconference

.org/content/miscFiles/publications_html?grp=wgs110. Metadata from electronic files can include " 'information about a particular data set which describes how, when and by whom it was collected, created, accessed, or modified and how it is formatted (including data demographics such as size, location, storage requirements and media information).' " *Williams*, 230 F.R.D. at 646 (quoting WORKING GRP. ON BEST PRACTICES FOR ELEC. DOC. RETENTION & PROD., THE SEDONA CONFERENCE, THE SEDONA GUIDELINES: BEST PRACTICE GUIDELINES & COMMENTARY FOR MANAGING INFORMATION AND RECORDS IN THE ELECTRONIC AGE App. F at 94 (Sept. 2005), *available at* http://www.thesedonaconference.org/content/miscFiles/publications _html?grp=wgs110). " 'Most metadata is generally not visible when a document is printed or when the document is converted to an image file.' " *Id.* We must decide here whether metadata needs to be disclosed under the PRA.

■ ¶13 "The public disclosure act, formerly chapter 42.17 RCW, was enacted in 1972 by initiative." *Soter*, 162 Wn.2d at 730 (citing *Dawson v. Daly*, 120 Wn.2d 782, 788, 845 P.2d 995 (1993)). "The portion dealing with public records has since been recodified at chapter 42.56 RCW and renamed the [PRA]." *Id.* The PRA requires that "[e]ach agency, in accordance with published rules, shall make available for public inspection and copying all public records, unless the record falls within the specific exemptions of . . . this chapter, or other statute which exempts or prohibits disclosure of specific information or records." RCW 42.56.070(1). The PRA should be liberally construed and its exemptions should be narrowly construed in favor of disclosure. Former RCW 42.56.030 (2005).

■ ¶14 We must decide whether the metadata associated with Thwing's original e-mail to Fimia is a "public record" subject to disclosure under the PRA. The PRA applies only to public records. RCW 42.56.070(1). " 'Public record' includes any writing containing information relating to the conduct of government or the performance of any

governmental or proprietary function prepared, owned, used, or retained by any state or local agency regardless of physical form or characteristics." Former RCW 42.56.010 (2005) (codified as former RCW 42.17.020(41) (2005)).[1] In sum, "public record" is defined very broadly, encompassing virtually any record related to the conduct of government.

■ ■ ¶15 This is an issue of first impression that has been examined previously by only one court. The Arizona Supreme Court ruled that "metadata in an electronic document is part of the underlying document [and] does not stand on its own." *Lake*, 222 Ariz. at 550. It therefore held that "when a public entity maintains a public record in an electronic format, the electronic version of the record, including any embedded metadata, is subject to disclosure under [Arizona's] public records law." *Id.* at 551. Whereas no statute defined "public records" in Arizona, a very broad statute defining public records as nearly any conceivable government record related to the conduct of government is liberally construed in Washington. *See* former RCW 42.56.010 (codified as former RCW 42.17.020(41)), .030. Metadata may contain information that relates to the conduct of government and is important for the public to know. It could conceivably include information about whether a document was altered, what time a document was created, or who sent a document to whom. Our broad PRA exists to ensure that the public maintains control over their government, and we will not deny our citizenry access to a whole class of possibly important government information. We agree with the Supreme Court of Arizona that an electronic version of a record, including its embedded metadata, is a public record subject to disclosure. There is

---

[1] " 'Writing' " is defined as "handwriting, typewriting, printing, photostating, photographing, and every other means of recording any form of communication or representation including, but not limited to, letters, words, pictures, sounds, or symbols, or combination thereof, and all papers, maps, magnetic or paper tapes, photographic films and prints, motion picture, film and video recordings, magnetic or punched cards, discs, drums, diskettes, sound recordings, and other documents including existing data compilations from which information may be obtained or translated." Former RCW 42.56.010 (codified as former RCW 42.17.020(48) (2005)).

no doubt here that the relevant e-mail itself is a public record, so its embedded metadata is also a public record and must be disclosed. We therefore affirm the Court of Appeals ruling that the metadata associated with Thwing's original e-mail to Fimia is subject to the PRA and must be disclosed.

¶16 As the Court of Appeals noted, the City admits that it has not provided the O'Neills with the metadata from Thwing's original e-mail to Fimia. *O'Neill*, 145 Wn. App. at 934. It is impossible to know at this point what information is contained within the metadata associated with that original e-mail. It is impossible to know this information because Fimia admittedly deleted the original e-mail from her computer, along with all of its associated metadata. Since we cannot see the metadata associated with Thwing's original e-mail to Fimia, we cannot see how it may be different from the metadata that the O'Neills have already received. It is important to note that the O'Neills have received only copies of metadata that are associated with *other* e-mails. They have *never* received a copy of the metadata from Thwing's original e-mail to Fimia on September 18. *This* is the metadata they had specifically requested on September 25, and this is the metadata that they have never received. We agree with the Court of Appeals that "the City has not yet proved that it provided to O'Neill access to the metadata she requested. She is entitled to this public record." *Id.* at 935.

 a. The State Records Management Guidelines (Guidelines)[2] Do Not Justify the City's Actions

▆▆▆▆ ¶17 The petitioners ask us to consider the Guidelines as evidence that metadata need not be released under the PRA. They argue that the Guidelines authorize government agencies to delete certain records once they have been printed. This argument is unpersuasive. While the PRA implies that there are circumstances when public records

---

[2] OFFICE OF THE SEC'Y OF STATE, DIV. OF ARCHIVES & RECORDS MGMT., LOCAL GOVERNMENT AGENCIES OF WASHINGTON STATE, RECORDS MANAGEMENT GUIDELINES (June 2001); CP at 59-138.

can be scheduled for destruction, the PRA does not allow agencies to destroy records that are subject to a pending records request. It states that agencies "shall retain possession of the record, and may not destroy or erase the record until the request is resolved." RCW 42.56.100. Here, the electronic version of the e-mail, including its embedded metadata, is a public record, so it could not be destroyed once Ms. O'Neill made a request for it.

¶18 The "Frequently Asked Questions About E-Mail Retention" section of the Guidelines states that employees can print messages and then delete them, "provided [that] you print the following information with the message: name of sender, name of recipient, date and time of transmission and/or receipt. You then file the printed message with the appropriate records series and retain it according to the retention approved for that series by the Local Records Committee." CP at 92. These guidelines are generic references to the retention of e-mails; however, they certainly do not authorize state agencies to delete e-mails that are already subject to a pending records request, which would directly violate RCW 42.56.100. Furthermore, Fimia herself declared that she must have "inadvertently deleted" the e-mail with its associated metadata, CP at 22, so she can hardly claim that she consciously deleted it in accordance with the Guidelines.

¶19 Most importantly, the courts are charged with carrying out the PRA. We are here to declare the law and effect of the statute; we need provide no deference to an agency's interpretation of the PRA. *Hearst Corp. v. Hoppe,* 90 Wn.2d 123, 130, 580 P.2d 246 (1978). Furthermore, when there is the possibility of a conflict between the PRA and other acts, the PRA governs. Former RCW 42.56.030; *Progressive Animal Welfare Soc'y v. Univ. of Wash.,* 125 Wn.2d 243, 262, 884 P.2d 592 (1994). Even assuming arguendo that the Guidelines could be interpreted to allow for the destruction of e-mails, the broad, liberally construed PRA governs. For this reason, we hold that the Guidelines do not justify the deletion of e-mails that are subject to a pending PRA

request. When a PRA request is made, a government agency must hold onto those records, including their metadata; they cannot be deleted.[3]

### b. The City Has the Opportunity To Inspect Fimia's Hard Drive for the Requested Metadata

 ¶20 Next, we give the City the opportunity to inspect Fimia's home computer's hard drive for the requested metadata. While the City has searched Fimia's e-mail folder for the deleted e-mail and its associated metadata, the City has not inspected the *hard drive* of Fimia's home computer. The City has a duty to provide records to the public that are subject to the PRA. RCW 42.56.070(1). Information that must be disclosed under the PRA conceivably exists on the hard drive of Fimia's computer. If it is possible for the City to retrieve this information, the PRA requires that it be found and released to the O'Neills. We will not yet say unequivocally that the City violated the PRA. The City still has the opportunity to search for the requested metadata on Fimia's home computer's hard drive. We note that this inspection is appropriate only because Fimia used her personal computer for city business.[4] If government employees could circumvent the PRA by using their home computers for government business, the PRA could be drastically undermined. We remand the case for the trial court to give the City the chance to search for the requested metadata, and to determine whether the City has violated the PRA.

¶21 In sum, we affirm the Court of Appeals ruling that remanded the case to the trial court. If, on remand, the City refuses to inspect Fimia's home computer's hard drive for the metadata, the trial court should find that the City

---

[3] Recent regulations that went into effect January 1, 2010, have clarified the law and now require agencies to maintain stored copies of e-mails, *including associated metadata*. WAC 434-662-150. In future cases, it will be even clearer that the Guidelines do not authorize the deletion of such metadata.

[4] We address only whether the City may inspect Fimia's home computer if she gives consent to the inspection. We do not address whether the City may inspect Fimia's home computer absent her consent.

violated the PRA, as the City will not have provided the O'Neills with the requested metadata. If the City inspects Fimia's home computer's hard drive, however, the trial court will be better able to determine what the requested metadata looks like. If the requested metadata is discovered during this inspection, the City is required to provide it to the O'Neills. Of course, the O'Neills were provided with two other copies of metadata: one from Thwing's e-mail to Way, and one from when Thwing resent her e-mail to Fimia on September 29. If the trial court determines that the metadata already provided to the O'Neills is *identical* to the metadata that the O'Neills actually asked for, the already released metadata may be sufficient. If the metadata from the September 18 e-mail cannot be found on Fimia's computer or if the metadata on the September 18 e-mail is not identical to the already released metadata, the trial court must determine, consistent with this court's opinion, whether the City's deletion of the metadata violated the PRA. If appropriate, the trial court should determine the monetary penalty under the PRA.

II. O'Neill's Oral Request at the Council Meeting Was Not a Request for Metadata

¶22 While we agree that metadata is included within the PRA's definition of a "public record," this does not necessarily mean that a government agency must provide metadata every time a request for a public record is made. At the council meeting, O'Neill made an oral request to see the e-mail. The City responded at first by providing a paper copy of the e-mail, without metadata attached. The Court of Appeals ruled that "[t]he PRA requires providing a public record only when it is identifiable," and that the oral request at the Council meeting made no mention of the electronic version of the e-mail or of the associated metadata. *O'Neill*, 145 Wn. App. at 932-33. We affirm the Court of Appeals and hold that the wording of the oral request did not clearly include metadata. Metadata is a new topic that has never before been dealt with in PRA litiga-

tion, and we conclude that a request for the metadata was not made until Ms. O'Neill specifically asked for it.

### III. The Court of Appeals Erred by Granting Attorney Fees

¶23 The Court of Appeals awarded attorney fees to the O'Neills because they had "partially prevailed." *Id.* at 940. Washington law provides that "[a]ny person who prevails against an agency in any action in the courts seeking the right to inspect or copy any public record or the right to receive a response to a public record request within a reasonable amount of time shall be awarded all costs, including reasonable attorney fees, incurred in connection with such legal action." RCW 42.56.550(4). We have previously held that attorney fees should be granted only when documents are disclosed to a prevailing party, and where further fact finding is necessary to determine whether the PRA was violated, the question of attorney fees should be remanded to the trial court. *Concerned Ratepayers Ass'n v. Pub. Util. Dist. No. 1 of Clark County*, 138 Wn.2d 950, 964, 983 P.2d 635 (1999). Here, the Court of Appeals did not find that the City violated the PRA. It merely stated that metadata is subject to the PRA and remanded for the trial court to determine *whether* the PRA was violated. *O'Neill*, 145 Wn. App. at 936. We also do not say whether the PRA was violated but remand the case to the trial court for that determination. The Court of Appeals therefore erred when it said that "[a]n award is proper because she has partially prevailed." *Id.* at 940. The trial court should award attorney fees only if it finds a violation of the PRA.

### IV. A Public Records Case Can Be Decided on Affidavits Alone

¶24 The O'Neills argue that the Court of Appeals erred when it upheld the trial court's ruling that a PRA cause of action can be decided based on affidavits alone. The O'Neills claim that this ruling violated the PRA and due process. The PRA provides that

> [u]pon the motion of any person having been denied an opportunity to inspect or copy a public record by an agency, the superior court in the county in which a record is maintained may require the responsible agency to show cause why it has refused to allow inspection or copying of a specific public record or class of records. The burden of proof shall be on the agency to establish that refusal to permit public inspection and copying is in accordance with a statute that exempts or prohibits disclosure in whole or in part of specific information or records.

RCW 42.56.550(1).

¶25 It also specifically states that "[t]he court may conduct a hearing based solely on affidavits." RCW 42.56.550(3). Relevant WAC provisions discussing RCW 42.56.550 provide:

> The act provides a speedy remedy for a requestor to obtain a court hearing on whether the agency has violated [RCW 42.56.550]. The purpose of the quick judicial procedure is to allow requestors to expeditiously find out if they are entitled to obtain public records. To speed up the court process, a public records case may be decided merely on the "motion" of a requestor and "solely on affidavits."

WAC 44-14-08004(1) (footnote omitted).

¶26 We have also stated that "the statute contemplates judicial review upon motion and affidavit. Were we to interfere with trial courts' litigation management decisions, we would make public disclosure act cases so expensive that citizens could not use the act for its intended purpose." *Brouillet v. Cowles Publ'g Co.*, 114 Wn.2d 788, 801, 791 P.2d 526 (1990) (citation omitted).

¶27 The O'Neills specifically checked the box for a hearing *without* oral argument on their motion to show cause, even though they had the opportunity to ask for oral argument. At the hearing, the trial court reviewed the motions and affidavits and determined that "all . . . responsive records that exist have been provided to the plaintiffs." CP at 141. It therefore dismissed the O'Neills' PRA action. The trial court followed the procedure set out in RCW

42.56.550, deciding a motion based solely on affidavits. The statute was not violated. The O'Neills also cite no applicable authority that would suggest such a procedure violates due process. We hold that due process was satisfied.

## CONCLUSION

¶28 We affirm the Court of Appeals and hold that the City may not have provided all public records to the O'Neills in accordance with the PRA. On remand, the trial court must give the City the opportunity to inspect Fimia's home computer's hard drive to consider whether all public records were properly disclosed. If the City refuses to inspect Fimia's home computer's hard drive, they have indisputably *not* provided all public records to the O'Neills, and the trial court should find that the City violated the PRA. Furthermore, if the City inspects Fimia's home computer's hard drive but cannot find the metadata associated with the September 18 e-mail, or finds metadata from the September 18 e-mail that is different from the metadata already released to the O'Neills, the trial court must determine, consistent with this court's opinion, whether the City's deletion of the metadata violated the PRA. If appropriate, the trial court should determine the monetary penalty under the PRA. We also affirm the Court of Appeals and hold that O'Neill's original request to see the e-mail did not inherently include a request to see metadata and that a public records case can be decided based on affidavits alone. We reverse in part, however, and direct the trial court not to grant attorney fees until an actual violation of the PRA is found.

SANDERS, CHAMBERS, FAIRHURST, and STEPHENS, JJ., concur.

¶29 ALEXANDER, J. (dissenting) — The majority remands this case to the trial court with instructions to give the city of Shoreline (City) "the opportunity to inspect" the hard drive on Shoreline Deputy Mayor Maggie Fimia's home

computer so that the City can provide assurance that all of the records requested by Beth O'Neill have been received by her. Majority at 154. I dissent because I do not believe that what is contained on the hard drive of a public employee's personal home computer, whether it is deemed "metadata" or something else, is a public record. That seems obvious since what is on the hard drive of an employee's computer is not a writing that is "retained by any state or local agency." Former RCW 42.56.010 (2005) (codified as former RCW 42.17.020(41) (2005)). More significantly, the majority provides no authority of law for the proposition that a city employee's home computer is subject to such a search or inspection by the employing city. In my opinion, the home computer hard drive is not subject to search or inspection by the City without permission of the employee.

¶30 My views on this subject are prompted to a great extent by the fact that the hard drive on an individual's home computer very likely contains personal information. That information is not public, and the private nature of it would necessarily be compromised by an "inspection" or "search" of the sort the majority orders.[5] Even if by some stretch it can be said that an employee's computer hard drive is a public record, the disclosure of it should be precluded pursuant to RCW 42.56.050(1), which prohibits a records requester from obtaining such a record if it "[w]ould be highly offensive to a reasonable person." See also RCW 42.56.230, which exempts disclosure of public records when the disclosure would violate the privacy rights of employees, including elected officials.

¶31 Because a public employee, including an elected official like Fimia, would be well within his or her rights to refuse an inspection or a search by the employer of his or her home computer, the employee's privacy right trumps any direction to the public employer to examine the hard drive of the employee's home computer. Therefore, the City

---

[5] Article I, section 7 of the state constitution provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." "Authority of law" is a search warrant.

should not, as the majority holds, be held to have violated the Public Records Act (PRA), chapter 42.56 RCW, by failing to conduct an impermissible search or inspection.

¶32 Finally, I feel compelled to point out that it seems fairly obvious that this long running dispute over what is on Deputy Mayor Fimia's computer hard drive has grown all out of proportion.[6] The undisputed fact is that Fimia received a totally unsolicited e-mail message at her home on her personal computer. The majority apparently believes that Fimia's act of receiving the message was a use of her home computer for city business. Although I entirely disagree with that proposition, the e-mail message may have become a public record by virtue of the fact that Fimia called attention to it at a city council meeting. That e-mail was, however, disclosed to the records requester, Beth O'Neill, in response to O'Neill's request. Apparently unsatisfied with receipt of a hard copy of the unaltered e-mail replete with forwarding information, O'Neill sought to examine the "metadata" associated with the e-mail. Fimia could not find it and concluded that she must have inadvertently destroyed it. Still unsatisfied, O'Neill commenced this suit and eventually obtained a ruling from the Court of Appeals to the effect that the trial court must determine on remand whether Fimia's computer hard drive contains the requested metadata. As noted above, the majority puts the onus on the City to inspect Fimia's computer hard drive on the basis that "the City may not have provided all public records to the O'Neills in accordance with the PRA." Majority at 154. For reasons I have stated above, it is my view that the City has fully met its obligation under the PRA by disgorging every relevant record it has in its possession and it may not engage in a nonconsensual inspection of Fimia's

---

[6] In endeavoring to come up with an analogy that might be helpful to persons, like me, who do not possess a high degree of technical knowledge about computers, it occurred to me that the quest for Fimia's metadata is akin to a search for an envelope that once contained a previously disclosed letter. If Fimia had received Lisa Thwing's message by regular United States mail and later indicated that she had discarded it, would this court seriously consider ordering her employer to search or inspect Fimia's home recycle container so that it could provide assurance that Fimia had, indeed, discarded the envelope? I think not.

computer. That being the case, the City should not be penalized if the employee asserts her right to privacy. I dissent.

MADSEN, C.J., and C. JOHNSON and J.M. JOHNSON, JJ., concur with ALEXANDER, J.

Reconsideration denied December 30, 2010.