[No. 56374–8.   En Banc.   May 31, 1990.]

FRANK B. BROUILLET, *as Superintendent of Public Instruction,* ET AL, *Appellants,* v. COWLES PUBLISHING COMPANY, *Respondent.*

*Kane, Vandeberg, Hartinger & Walker,* by *William A. Coats* and *Clifford D. Foster, Jr.,* for appellant Brouillet.

*Faith Hanna,* for appellant Washington Education Association.

*Witherspoon, Kelley, Davenport & Toole, P.S.,* by *Duane M. Swinton,* for respondent.

UTTER, J.—The Cowles Publishing Company requested records specifying the reasons for teacher certificate revocations during the last 10 years. It wanted to use the records to prepare investigative articles on teacher sexual misconduct with students. The State Superintendent of Public Instruction (SPI) and the Washington Education Association (WEA) sought a declaratory judgment upholding SPI's refusal to fully comply with Cowles' request.[1] The trial judge ordered the release of the records sought with certain deletions designed to protect the privacy of the student victims of sexual misconduct. We agree with the trial court's conclusion that the Washington public disclosure act requires release of these records. *See* RCW 42.17.

I

Prior to filing suit, SPI gave Cowles the names of the 89 teachers whose certificates were revoked in the last 10 years

---

[1] SPI filed a petition for judicial review and declaratory relief on April 29, 1988. The court granted WEA leave to intervene as a party plaintiff on May 16, 1988.

and their last place of employment.[2] Cowles has not sought the release of the names of victims.

The documents detailing the reasons for revocation of teacher certificates were at issue in the proceedings below.[3] Some of these documents contain statements about the sexual involvement of teachers with students.

The parties submitted affidavits of school officials, students, teachers, attorneys involved in teacher decertification, and various experts. These affidavits addressed the question of whether release of these records would discourage student witnesses from making complaints about teacher sexual misconduct which form the basis for some certificate revocations. The school system[4] moved to strike affidavits of out–of–state administrators, or, in the alternative, to permit oral testimony. The trial court struck opinion testimony from the relevant affidavits. But it admitted the factual portions into evidence and did not allow oral testimony.

Cowles sought to prove at trial that disclosure of these records would not impede investigation of teachers. Cowles submitted affidavits from students who stated that disclosure would encourage victims of abuse to come forward because they would feel less isolated. The students also said that release of details of sexual contact was less harmful than having false rumors circulating. Cowles also submitted an affidavit from a journalist indicating that all 12 students

---

[2]SPI has also released information from their investigatory files which shows which teachers sought hearings and when they were contacted. See Clerk's Papers, at 76–421. This information does not include the reason for the loss of teacher certification.

[3]SPI did not voluntarily comply with Cowles' request for copies of letters of complaint from school superintendents. These letters triggered investigations of teachers for improper conduct with students. SPI voluntarily released letters of probable cause sent to teachers advising them of their rights to a hearing, but deleted material in these letters identifying the specific charges being made. Cowles also requested witness statements and applications for certification.

[4]The term "school system" refers to SPI and WEA jointly.

he interviewed agreed to release details of the incidents they were involved in and 5 agreed to the release of their names.

One father's affidavit stated that disclosure would enable the public to encourage the school system to diligently investigate complaints. He believed that the school system would have dropped the investigation into sexual abuse of his daughter but for his persistence.

The states of Florida, Nebraska and Georgia investigate teachers while allowing disclosure of records. Finding of fact 10. The record does not permit firm conclusions about the effect this openness has on disciplinary actions due to sexual abuse.

The school system submitted affidavits of school officials and lawyers who had experience in certificate revocation. These affiants opined that disclosure would discourage witnesses from coming forward with complaints of sexual abuse. Several affiants stated that in their experience students were always concerned about confidentiality and that assurances of confidentiality were important in encouraging witnesses to make detailed accusations. One affiant testified that victims over 13 are especially concerned about the possibility of newspaper coverage. The school system's affidavits pointed out that details of the incidents might be used to identify the complaining witnesses.

Eighty–six of the eighty–nine teachers who lost their certificates gave them up voluntarily rather than invoking their right to either a closed or open hearing. Assurances of confidentiality play a key role in negotiating relinquishment of the certificate.

Judge Casey entered findings of fact and conclusions of law and held that the Washington public disclosure act required the school system to release the requested documents. The court, however, ordered the school system to delete information which might facilitate identification of victims of teachers' sexual misconduct. It ordered deletion of victims' names, addresses, phone numbers, parents'

names, physical characteristics, class scheduling information, and special circumstances ("such as marrying the teacher").

## II

█ This case involves important issues of public policy. The public disclosure act adopted by the people through the initiative process and amended by the Legislature controls the resolution of these issues. The policy of the act favors disclosure. *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 127, 580 P.2d 246 (1978) (citing RCW 42.17). The act states:

> Courts shall take into account the policy of this chapter that free and open examination of public records is in the public interest, even though such examination may cause inconvenience or embarrassment to public officials or others. . . .

RCW 42.17.340(2). The public disclosure act mandates disclosure of all public records not falling under specific exemptions delineated in the act. In keeping with the act's policy, we construe exemptions from mandatory disclosure narrowly. *Hearst*, 90 Wn.2d at 128. Before determining whether any exemption applies here, we must determine the scope of review.

█ Because the trial court decided this case on the basis of affidavits, we review its decision de novo. *See In re Rosier*, 105 Wn.2d 606, 616, 717 P.2d 1353 (1986); RCW 42.17.340(2). The government has the burden of proving that the information sought falls within one of the act's exemptions. RCW 42.17.340(1); *Spokane Police Guild v. Liquor Control Bd.*, 112 Wn.2d 30, 35, 769 P.2d 283 (1989).

We reject SPI's argument that we should review the trial court's findings of fact and conclusions of law as we would a motion for summary judgment. Three decisions of the Court of Appeals support the school system's argument that a decision based on affidavits may be treated like a summary judgment motion on appeal. *See In re Bellanich*, 43 Wn. App. 345, 350, 717 P.2d 307 (1986); *Robeson v. Helland*, 32 Wn. App. 487, 489, 648 P.2d 461 (1982); *Fisher v. Clem*, 25 Wn. App. 303, 307, 607 P.2d 326 (1980).

These decisions conflict with precedent treating final decisions based on affidavits as decisions on the merits. *See, e.g., Police Guild,* 112 Wn.2d at 34–36; *In re Rosier,* 105 Wn.2d at 616; *Smith v. Skagit Cy.,* 75 Wn.2d 715, 718–19, 453 P.2d 832 (1969). We reject all decisions inconsistent with these holdings. This case will be reviewed de novo, but the facts will not be construed in the light most favorable to the school system inasmuch as no party moved for summary judgment below.

■ The SPI argues that WAC 180–75–019(3), a state board of education regulation guaranteeing the confidentiality of the records in this case, merits deference. Our unanimous decision in *Hearst* precludes granting any deference to this regulation. In *Hearst,* we explained that the agency is without authority to determine the scope of exemptions under the act. *Hearst,* 90 Wn.2d at 129. We also noted that the statute places the burden of proof on the agency and requires de novo review of its determinations. "Thus, even when the court's interpretation is contrary to that of the agency charged with carrying out the law, it is ultimately for the court to declare the law and the effect of the statute." *Hearst,* at 130.

The burden of proof is mandated statutorily. We cannot defer to the state board of education's rule and must, therefore, decide for ourselves whether the act exempts these records from disclosure. *Hearst* noted, "leaving interpretation of the act to those at whom it was aimed would be the most direct course to its devitalization." *Hearst,* at 131. The agency must shoulder the burden of proving that one of the act's narrow exemptions shields the records it wishes to keep confidential.

### III

The school system claims that various exemptions to the public disclosure act and the federal education privacy law protect these records. *See* RCW 42.17.310(1)(d) (privacy and law enforcement exemptions for investigative records);

RCW 42.17.310(1)(i) (intra–agency memorandum exemption); RCW 42.17.260 (exemptions in other statutes); 20 U.S.C. § 1232g (1974). We examine each of these claims in turn.

The trial court found that the investigative records exemptions found in RCW 42.17.310(1)(d) do not apply to the records at issue in this case. That provision exempts:

specific investigative records compiled by . . . state agencies vested with the responsibility to discipline members of any profession, the nondisclosure of which is essential to effective law enforcement or for the protection of any person's right to privacy.

RCW 42.17.310(1)(d). The records here are specific investigative records compiled by a state agency with the responsibility to discipline teachers. The issue is whether nondisclosure is essential to effective law enforcement or the protection of the right to privacy. The school system has argued that nondisclosure is essential to revocation of teacher certificates. It has not argued that nondisclosure is essential to criminal law enforcement.

■■ The trial court concluded that the revocation of teacher certificates simply is not law enforcement. Cowles urges us to hold that the term "law enforcement" refers only to criminal law enforcement and not to civil law enforcement. But the facts of this case do not require us to reach this issue. An examination of the term "law enforcement" reveals that certificate revocation involves neither criminal nor civil law enforcement. SPI administers a school system, it does not enforce law.

Law enforcement involves "[t]he act of putting . . . law into effect; . . . the carrying out of a mandate or command." Black's Law Dictionary 474 (5th ed. 1979). Because SPI "may" revoke certificates for immoral conduct, it does not carry out a command. SPI's duties regarding revocation of teaching certificates are basically discretionary licensing decisions. Certificates "may be revoked" for grounds set out by statute. RCW 28A.70.160.

Law enforcement involves imposition of sanctions for illegal conduct. But SPI may revoke certificates for conduct which could not be illegal under the constitution, such as "immorality", "intemperance", or "unprofessional conduct". The criteria governing certificate revocations defines unprofessional conduct which can justify termination, not illegal conduct.[5]

Finally, law enforcement involves imposition of a fine or prison term. The record in this case does not link these investigations with any SPI attempt to seek either civil or criminal penalties against the teachers. *Cf. J.P. Stevens & Co. v. Perry*, 710 F.2d 136 (4th Cir. 1983) (investigation of employment practices); *Birch v. United States Postal Serv.*, 803 F.2d 1206 (D.C. Cir. 1986) (investigation into criminal use of postal permits).

The definition of administration, unlike the definition of "law enforcement", precisely describes SPI's duties. Administration includes "[d]irection or oversight of any . . . employment." Black's Law Dictionary, at 41.

SPI's attempt to characterize its supervision of its employees as law enforcement is unpersuasive. The federal Freedom of Information Act (FOIA) requires disclosure of inquiries into how well the government is supervising its employees. *See Rural Housing Alliance v. United States Dep't of Agriculture*, 498 F.2d 73 (D.C. Cir. 1974) (remanding to determine whether investigation of housing discrimination was for purpose of enforcing law or simply governmental oversight of its employees); *Stern v. Small Business Admin.*, 516 F. Supp. 145, 150 (D.D.C. 1980) (holding that a disciplinary investigation of civil rights complaints does not have a law enforcement purpose); *see also Department of Air Force v. Rose*, 425 U.S. 352, 48 L. Ed. 2d 11, 96 S. Ct. 1592 (1976) (permitting release of

---

[5]SPI has chosen to limit its broad statutory authority by regulation. *See* WAC 180–75–037. A teacher can still be fired for disobeying administrative rules of the state board of education and some other acts which violate no statute. *See, e.g.,* WAC 180–75–037(2).

records of cadet discipline; no law enforcement exemption claim even made). The Fifth Circuit cases holding that investigations of nongovernmental employees' fitness for their jobs create records compiled for law enforcement purposes are unpersuasive. *See Pope v. United States,* 599 F.2d 1383 (5th Cir. 1979) (investigation of attorney's fitness to practice before IRS); *Evans v. Department of Transp.,* 446 F.2d 821 (5th Cir. 1971) (FAA investigation of pilot's fitness), *cert. denied,* 405 U.S. 918 (1972). *Pope* relies on cases suggesting that FOIA applies to civil as well as criminal law enforcement, but never defines law enforcement. *Pope,* 599 F.2d at 1386. The *Evans* court imputes its views of public policy to Congress and likewise fails to define law enforcement. *Evans,* 446 F.2d at 824. In any event, these cases are less relevant than *Stern* which dealt directly with supervision of government employees.

*Cowles Pub'g Co. v. State Patrol,* 109 Wn.2d 712, 748 P.2d 597 (1988) does not establish that investigations into the qualifications of state employees constitute law enforcement. *Cowles* held that an internal police investigation need not be released. The plurality opinion did not characterize the investigation as law enforcement. Rather, the job the officers did was law enforcement. Therefore, disclosure would interfere with law enforcement because it would undermine confidence in the police and interfere with the salutary effects future investigations might have on law enforcement. *Cowles,* at 729–31.

Exemptions should be narrowly construed. This principle compels the conclusion that revocation of teaching certificates is not law enforcement and that the law enforcement exemption does not apply in this case.

RCW 42.17.310(1)(d) allows nondisclosure of investigative records to protect individual privacy even if they are not essential to effective law enforcement. Therefore, we must decide whether disclosure of these records violates the privacy rights of teachers or students.

■ The Legislature has defined privacy, and its definition must be applied to the facts of this case. Under the

statute, the school system must show that the records sought are not a legitimate concern of the public *and* would be highly offensive to a reasonable person. RCW 42.17.255 ("A person's 'right to privacy' . . . is . . . violated only if disclosure of information about the person: (1) Would be highly offensive to a reasonable person, and (2) is not of legitimate concern to the public"); *Police Guild,* 112 Wn.2d at 37–38 (same); *Hearst,* 90 Wn.2d at 135–36 (same).

The school system cites dicta in the plurality opinion in *Cowles,* suggesting that a balancing test governs the right of privacy under the statute. *See Cowles,* 109 Wn.2d at 726. That dicta suggests we balance the right to privacy in the intimate details of one's life against the need for public accountability. This would be unwise as the Legislature has not authorized this kind of freewheeling policy judgment. The Legislature has specifically adopted the test articulated by this court in *Hearst* and reaffirmed in *Police Guild. See* RCW 42.17.255. Balancing is not called for. Instead, the statute requires the government to prove that the information would be offensive *and* of no legitimate public interest.

The school system does not contest Cowles' argument that the information identifying the reasons for certificate revocation is of legitimate public concern either in its briefs or its affidavits. Sexual abuse of students is a proper matter of public concern because the public must decide what can be done about it. The public requires information about the extent of known sexual misconduct in the schools, its nature, and the way the school system responds in order to address the problem. Because the information sought is of legitimate public interest, we conclude that no privacy right has been violated.

Cowles has not sought the release of the names of students, so the fact that there may be no legitimate public interest in this information is of no consequence for this case. The privacy exemption might well justify the deletion of the names and addresses of students even absent the consent of both parties. Since both parties consented to the redaction in this case, that issue is not before us.

We note that the trial court has ordered deletion of other information which might lead to identification of the students. The school system has argued that the court's effort is insufficient without specifying what information should be deleted. The Legislature's definition of privacy requires disclosure of information of legitimate interest to the public even if there is some risk of embarrassment to the individuals involved. We are not persuaded that the information disclosed will cause identification of the students. Because the information sought does not violate the right to privacy and nondisclosure is not essential to law enforcement, the investigative records exemptions do not shield these records.

The act also exempts "[p]reliminary drafts, notes, recommendations, and intra–agency memorandums in which opinions are expressed or policies formulated or recommended" from disclosure. RCW 42.17.310(1)(i). It is argued by the teachers' union that this exemption protects letters from a local school district superintendent which initiate the certificate revocation process.

■ *Hearst* precludes accepting the union's argument. There we established that the exemption only protects documents which are part of "a *deliberative or policy–making* process." (Italics ours.) *Hearst,* 90 Wn.2d at 133. The documents in this case have to do with policy implementation not policy making.

The Court of Appeals decision in *Hafermehl v. UW,* 29 Wn. App. 366, 628 P.2d 846 (1981) supports the union's position. The *Hafermehl* court held that the intra–agency memorandum exemption allowed the University of Washington to refuse disclosure of letters opposing Hafermehl's unsuccessful bid for tenure. That position does not give proper weight to the statutorily required narrow construction of exemptions. *Hafermehl*'s holding regarding the exemption for intra–agency memoranda directly conflicts with *Hearst* and it is overruled to the extent it conflicts with this opinion. Hiring and promotion decisions are

generally not part of the policy–making process which the exemption protects.

Moreover, our statement in *Hearst* that recommendations actually implemented "lose their protection when adopted by the agency" is contrary to *Hafermehl*. *Hearst*, 90 Wn.2d at 133. This limitation would compel us to release these records even if we considered certificate revocation to be a policy decision.

The documents at issue perform the function of presenting facts, not opinions. *See* WAC 180–75–034(2). The exemption does not protect factual data, only actual opinion. *Hearst*, at 133–34; *cf. Hafermehl*, 29 Wn. App. at 372 (letters used in tenure evaluation exempt because policymakers rely on opinions expressed in the letters).

█ The public disclosure act exempts records falling "within the specific exemptions" of other statutes. *See* RCW 42.17.260. The union argues that the Legislature created an exemption by granting teachers a right to a closed hearing on certificate revocations. *See* RCW 28A.58.455(2). The closed hearing provision does not specifically exempt anything from disclosure. The language of the statute does not authorize us to imply exemptions but only allows specific exemptions to stand.

## IV

█ SPI argues that the Family Educational Rights and Privacy Act of 1974 prohibits disclosure of these records. *See* 20 U.S.C. § 1232g. This law protects student records, not teacher records. *See Klein Indep. Sch. Dist. v. Mattox*, 830 F.2d 576 (5th Cir. 1987), *cert. denied*, 485 U.S. 1008 (1988).

## V

The trial court partially granted the school system's motion to strike the affidavits of out–of–state administrators or to allow oral testimony. The trial court deleted

opinion testimony from the challenged affidavits. The school system challenges the trial court's failure to strike the factual portions of the affidavits or to allow it to present oral testimony.

Generally speaking, the trial court's evidentiary decisions are reviewed under an abuse of discretion standard. *See Davis v. Globe Mach. Mfg. Co.,* 102 Wn.2d 68, 76–77, 684 P.2d 692 (1984). The trial court did not abuse its discretion.

The motion which the trial court denied in part challenged the admissibility of affidavits on grounds of relevancy. *See* ER 401. A trial judge may reasonably conclude that the existence of out–of–state procedures allowing access to records of certificate revocation has relevance to the question of whether nondisclosure in Washington is essential to law enforcement or the protection of privacy.

The school system wanted to cross–examine out–of–state administrator Karen Wilde and offered to prove that she would admit that lack of confidentiality had discouraged some complaining students in her state. The trial court deleted the opinion testimony that lay at the heart of the affidavits challenged. The school system failed to take Wilde's deposition or introduce any affidavits or depositions of its own about other states. It did not show any compelling need for oral examination.

Finally, the statute contemplates judicial review upon motion and affidavit. *See* RCW 42.17.330. Were we to interfere with trial courts' litigation management decisions, we would make public disclosure act cases so expensive that citizens could not use the act for its intended purpose.

The trial court's decision ordering disclosure of the records sought, with the deletions Judge Casey has found necessary to protect the students' identities, is affirmed.

Attorney fees and costs are awarded to Cowles. *See* RCW 42.17.340(3).

CALLOW, C.J., and BRACHTENBACH, DOLLIVER, DORE, ANDERSEN, DURHAM, SMITH, and GUY, JJ., concur.